FILED

2014 Feb-03  PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **CLARENCE ARMOUR, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **2:13-CV-01408-KOB** |
| | ) | |
| **MONSANTO COMPANY, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the court on "Defendants' Motion to Dismiss." (*Armour*, Doc. 18). Plaintiffs bring this action under Rule 60(d) seeking to declare void the September 9, 2003 final judgment in *Tolbert, et al. v. Monsanto Company, et al.*, Case No. 2:01-cv-01407-KOB. (*Armour*, Doc. 1). Defendants filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6), arguing that Plaintiffs' complaint fails to satisfy the standard for an independent action in equity, that Plaintiffs have failed to state a plausible claim that the *Tolbert* final judgment is void, that Plaintiffs' claims are barred by principles of estoppel, that Plaintiffs' class allegations do not satisfy the requirements of Rule 23, and that the court lacks jurisdiction to hear this case. The court finds that Plaintiffs have not met the standard for a Rule 60(d) independent action; therefore, Defendants' motion is due to be GRANTED and Plaintiffs' complaint is due to be DISMISSED WITH PREJUDICE.

I.      FACTS

For the purposes of this motion, the court considers the facts as alleged in Plaintiffs'

complaint, as well as the record in *Tolbert*.[1]

Prior to September 1, 1997, a company formerly known as Monsanto Company operated

an agricultural products business, a pharmaceuticals and nutrition business, and a chemical

products business. Today, the pharmaceutical aspect of the business is owned by Pharmacia—a

wholly owned subsidiary of Pfizer Inc.—and the chemical aspect of the business is owned by

Solutia. Monsanto retains the agricultural aspect of the business and Monsanto, Pharmacia, and

Solutia are three separate entities. (*Armour*, Doc. 1, ¶ 3).

The *Tolbert* case arose out of disputes surrounding polychlorinated byphenyls ("PCBs")

that Monsanto Company manufactured and released in Anniston, Alabama. On September 9,

2003, following over two years of complex litigation, Judge U. W. Clemon of the Northern

District of Alabama entered a Final Judgment and Order (*Tolbert*, doc. 218) incorporating a $300

million Settlement Agreement and Global Settlement Agreement. According to the *Armour*

complaint, the *Tolbert* Settlement "was represented to the Court to be 18,000 individual claims

for injuries and damages to person and real property as a result of exposure to [PCBs]." (*Armour*,

Doc. 1, ¶ 4). Another related pair of state court cases, *Abernathy v. Monsanto Company, et al.*,

C.A. No. CV-1996-269 and C.A. No. CV-2001-832, "supposedly [involved] 3500 individual

plaintiffs" and also settled for $300 million. (*Armour*, Doc. 1, ¶ 7).

The court divided the settlement funds between the Tolbert Qualified Settlement Fund,

---

[1] The court takes judicial notice of the *Tolbert* record without converting the motion to
dismiss to a motion for summary judgment because the record in *Tolbert* is a matter of public
record. *See In re Delta Resources, Inc.*, 54 F.3d 722 (11th Cir. 1995).

which distributed the funds to and for the benefit of the *Tolbert* Plaintiffs via the Settlement

Administrator, and a medical clinic that Defendants were to establish in Calhoun County,

Alabama according to certain specifications contained in the Agreement.

      The Final Judgment and Order states:

> The terms of the Settlement Agreement and this Final Judgment and Order shall
> be forever binding on all Plaintiffs (as defined in paragraph 11), as well as their
> heirs, executors and administrators, successors and assigns; and those terms shall
> be res judicata and have other preclusive effect in all pending and future claims,
> lawsuits, or other proceedings maintained or on behalf of any such persons, to the
> extent that such claims, lawsuits, or other proceedings involve PCBs in Anniston,
> Alabama or other claims that could have been raised by this action or are
> otherwise encompassed by this action and this Final Order and Judgment.

(*Tolbert*, Doc. 218, ¶ 10).

      Paragraph 11 defines the Plaintiffs as follows:

> The Final Judgment and Order shall be binding on all parties to this action and on
> the entities that have accepted performance or payment obligations under the
> written settlement documents. Plaintiffs to be bound shall be defined as all
> persons named as plaintiffs in any complaint or amended complaint filed in these
> actions to date, together with any person not so named but subject to the tolling
> agreement between the parties. The Court hereby orders plaintiffs to identify all
> persons subject to such tolling agreement as an additionally named plaintiff within
> thirty (30) days after entry of this Final Judgment and Order.

(*Tolbert*, Doc. 218, ¶ 11).

      On October 9, 2013, pursuant to Paragraph 11 of the Final Judgment and Order, Plaintiffs

filed a final "Consolidated, Amended, and Restated Complaint," that incorporated the complete

list of Plaintiffs in *Tolbert* by reference to three different appendices. (*Tolbert*, Doc. 228).

According to the *Armour* complaint, "[a]t least 7169 of the individual plaintiffs in the *Tolbert* . . .

case were not before the Court at the time of the 'Final Judgment And Order' approving the

settlement." (*Armour*, Doc. 1, ¶ 11). All of the *Armour* Plaintiffs were included in the

Consolidated, Amended, and Restated Complaint via one of the three appendices. (*See Armour*, Doc. 228, Appendix A; *Armour*, Doc. 228, Appendix B; *Armour*, Doc. 54, Appendix A[2]).

In the *Armour* complaint, Plaintiffs claim that "the Court lacked personal and/or subject matter jurisdiction of at least 7,159 individual Plaintiffs and their claims at the time it approved the settlement of this case and attempted to bind them by the judgment. Since the Court lacked jurisdiction, the Final Judgment And Order is void." (*Armour*, Doc. 1, ¶ 12).

## II.   PROCEDURAL POSTURE

The *Tolbert* case, upon which the *Armour* complaint is based, was filed on May 31, 2001 and settled on September 9, 2003. Since that time, the Northern District of Alabama has overseen the administration of the Tolbert Qualified Settlement Fund, first by Judge Clemon until January 2009, then by Magistrate Judge Paul W. Greene until October 2012, and now by the undersigned.

A subset of *Tolbert* Plaintiffs filed this case, *Armour*, on July 30, 2013. After the filing of the *Armour* complaint, the Defendants in *Tolbert* filed an "Expedited Motion of Monsanto Company, Pharmacia, LLC, and Solutia, Inc. for an Injunction to Protect this Court's Final Judgment." (*Tolbert*, Doc. 938). The *Tolbert* Defendants filed this motion in the *Tolbert* action, seeking to enjoin the *Armour* Plaintiffs from proceeding with the *Armour* action. After extensive briefing, the court denied the motion for an injunction, holding that a Rule 60 independent action was a legitimate method for challenging a final judgment, but withholding judgment on the issue

---

[2]Appendix A to the Ninth Amended Complaint is not available via the court's current online filing system, CM/ECF, because the current system was not in place in 2002 when the Ninth Amended Complaint was filed. The docket notes, however, "[atta filed in expandable folder]," indicating that the attachment—Appendix A—is part of the record and available in the Office of the Clerk of Court. (*Tolbert*, Doc. 54, Appendix A). Defendants have also attached a copy of Appendix A to the Ninth Amended Complaint as Appendix C to "Defendants' Memorandum of Law in Support of Motion to Dismiss." (*Armour*, Doc. 19, Exhibit C).

4

of whether the *Armour* complaint met the requirements for a Rule 60 independent action. (*Tolbert*, Doc. 960). The *Tolbert* Defendants have appealed this ruling to the Eleventh Circuit, where it currently awaits decision. (*Tolbert*, Doc. 965). Defendants filed the motion to dismiss that is before the court in this case on November 8, 2013. The matter has been fully briefed. (*Armour*, Docs. 19, 30, 32).

## III.    STANDARD OF REVIEW

Rule 12(b)(1) attacks come in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in this complaint are taken as true for the purposes of the motion." *Id*. at 1529 (internal quotations omitted). Factual attacks, however, "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id*.

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009).   Pleadings that contain nothing more than "a formulaic recitation of the elements of

a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has identified "two working principles" for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the

well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

## IV.    LEGAL DISCUSSION

The court begins by noting that the issues in this case are unique and no cases exist to instruct the court on exactly how to handle this situation. The court will apply principles of law from the cases it finds most applicable, but will not undertake to address every single case addressed by the parties in the briefs—although it has thoroughly reviewed them all.

### A.    Jurisdiction

The court need only briefly address the Defendants' jurisdictional argument. Although they argue that "[s]ubject-matter jurisdiction over Plaintiffs' challenge to the *Tolbert* final judgment rests exclusively in the *Tolbert* action," Defendants acknowledge that "the Court rejected this particular argument in denying the Defendants' motion for relief in the *Tolbert* case." (*Armour*, Doc. 19, at 16, 16 n. 5). As Defendants have recognized, the court already addressed this argument by stating:

> [O]n its face, the *Armour* complaint is a valid Rule 60 independent action. *See Bankers Mortgage Co. v. United States*, 423 F.2d 73, 78 (5th Cir. 1970) ("The second procedure contemplated by Rule 60(b) is an independent action to obtain relief from a judgment, order, or proceeding."); *see also United States v. Beggerly*, 524 U.S. 38 (1998); *Solomon v. DeKalb County, Georgia,* 154 Fed. App'x 92 (11th Cir. 2005). The court does not at this time address the sufficiency of the *Armour* complaint under the requirements for a Rule 60 independent action, but leaves this issue to be addressed in the *Armour* action itself.

(*Tolbert*, Doc. 960, at 3) (footnotes omitted). For these same reasons—which the court more

7

fully developed in its Order in *Tolbert*—the court rejects Defendants jurisdictional argument. The court *does* find, however, that the time and forum are now appropriate to address the sufficiency of the *Armour* complaint.

### B.    Requirements for a Rule 60(d) Independent Action

Plaintiffs bring their complaint as a Rule 60(d) independent action, and Defendants' primary argument in the motion to dismiss is that the complaint fails to satisfy the standard for such an action. Plaintiffs do not truly address this argument in their Response, but instead jump straight into the substance of whether the *Tolbert* judgment should be considered void as to the *Armour* Plaintiffs. The court finds, as it noted in its Order denying the motion for an injunction in *Tolbert*, that determining whether the complaint meets the requirements for a Rule 60(d) independent action is a necessary first step before it can consider the merits of Plaintiffs' challenge.

Prior to 2007, Rule 60(b) included a savings clause that allowed a party to obtain relief either by a motion or by an independent action. FED. R. CIV. P. 60(b) (2006). The 2007 Amendments moved a significant portion of Rule 60(b) to the newly created 60(c), (d), and (e). The savings clause allowing an independent action is now located in Rule 60(d), and the Advisory Committee Notes to the 2007 Amendments specifically note that "[r]elief continues to be available only as provided in the Civil Rules or by independent action." FED. R. CIV. P. 60(b) advisory committee's note. The text of the current Rule 60(d) states: "This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding . . . ."

The 2007 changes were intended to be stylistic only, and courts have consistently applied

the jurisprudence surrounding Rule 60(b) independent actions to Rule 60(d) independent actions.

*See Day v. Benton*, 346 F. App'x 476 (11th Cir. 2009) (applying key Supreme Court and

Eleventh Circuit precedent interpreting Rule 60(b) to Rule 60(d)); *see also Jackson v. Danberg*,

656 F.3d 157 (3d Cir. 2011); *Gottlieb v. S.E.C.*, 310 F. App'x 424 (2d Cir. 2009); *Marcelli v.

Walker*, 313 F. App'x 839 (6th Cir. 2009); *Sindar v. Garden*, 284 F. App'x 591 (10th Cir. 2008).

Therefore, the court will apply both pre-2007 Rule 60(b) precedent and post-2007 Rule 60(d)

precedent, referring to them both as simply a "Rule 60 independent action."

One of the key cases that supports a plaintiff's ability to obtain relief from a judgment via

an independent action is *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 78 (5th Cir. 1970)

("The second procedure contemplated by Rule 60(b) is an independent action to obtain relief

from a judgment, order, or proceeding.").[3] Despite its support for the legitimacy of a Rule 60

independent action, however, the case also imposes stringent requirements on such an action.

Under *Bankers Mortgage*, the "essential elements of the independent action" are:

> (1) a judgment which ought not, in equity and good conscience, to be enforced;
> (2) a good defense to the alleged cause of action on which the judgment is
> founded; (3) fraud, accident, or mistake which prevented the defendant in the
> judgment from obtaining the benefit of his defense; (4) the absence of fault or
> negligence on the part of defendant; and (5) the absence of any adequate remedy
> at law.

423 F.2d at 79 (quoting *National Sur. Co. v. State Bank*, 120 F. 593, 599 (8th Cir. 1903)). The

Court in that case also noted that "[c]ourts have consistently held that a party is precluded by res

judicata from relitigation in the independent equitable action issues that were open to litigation in

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the
Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed
down prior to October 1, 1981.

the former action where he had a fair opportunity to make his claim or defense in that action." *Id*.

The Supreme Court also addressed the topic of Rule 60 independent actions in *United States v. Beggerly*, 524 U.S. 38 (1998). According to the Court: "Independent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." *Id*. at 46. The Court summed up the standard by stating that "an independent action should be available only to prevent a *grave miscarriage of justice*." *Id.* at 47 (emphasis added).

In *Travelers Indemnity Co. v. Gore*, the Eleventh Circuit affirmed the opinion of the United States District Court for the Southern District of Georgia and attached the district court's opinion as an exhibit. 761 F.2d 1549 (11th Cir. 1985). The district court's opinion reveals the stringency of the standards for a Rule 60 independent action. That court opened by stating: "After reviewing all the pleadings in this action, the court's earlier orders, and the applicable law, the court finds, unhappily and not without strong inner-moral protest, that the plaintiff's complaint must be dismissed." *Id.* at 1550. Following this lament, the court found that the perjury by the defendant did not constitute fraud on the court and thus failed to meet the requirements of an independent action. *Id.* at 1551.

More recently, in *Solomon v. DeKalb County, Georgia*, the Eleventh Circuit again addressed Rule 60 independent actions. 154 F. App'x 92 (11th Cir. 2005). The Court observed that the Rule 60 independent action gives the court "the power to set aside a judgment whose integrity is lacking," but noted that what the rule and "these independent actions *do not* provide is a means for litigants to obtain the district court's reconsideration of the claims and defenses its

10

judgment adjudicated." *Id.* at 93 (emphasis in original). The Court further stated: "Relief under this clause . . . is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances. The party seeking relief has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." *Id.* (quoting *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)).

To apply this law to the circumstances in this case, the court will evaluate the five "essential elements" from *Bankers Mortgage*, looking at each through the lens of the "grave miscarriage of justice" standard that the Supreme Court in *Beggerly* has set out for Rule 60 independent actions as a whole and the other cautionary statements from the Eleventh Circuit in *Solomon* about avoiding relitigation of judgments and independent actions being an extraordinary remedy. The elements from Bankers Mortgage are not a perfect test because three of the five elements apply exclusively to a *defendant* seeking relief from a judgment. Here, the Plaintiffs would automatically fail the test because of an inability to meet these three elements. Because of the shortage of relevant authority on the Rule 60 independent action, however, the court will still use these elements to the extent possible as a guide to determining whether a grave miscarriage of justice has occurred.

The first element—"a judgment which ought not, in equity and good conscience, to be enforced"—is a broad, sweeping determination that requires that the court examine the reasons why the *Armour* Plaintiffs seek to overturn the *Tolbert* Final Judgment. This element, in particular, must be considered in light of the "grave miscarriage of justice" standard. The *Armour* Plaintiffs allege that the *Tolbert* court did not have subject matter or personal jurisdiction over them in entering the *Tolbert* Final Judgment because they were not plaintiffs before the court

until thirty days after the court entered the Final Judgment.

The court agrees that enforcing a judgment against an individual who was *never* a party to the action in which the judgment was entered would be inequitable, but such a circumstance is not what Plaintiffs allege. Plaintiffs specifically allege that they were added to the *Tolbert* case via Exhibits A and B of the Consolidated, Amended, and Restated Complaint (*Tolbert*, doc. 228), which was filed with the court on October 9, 2003. (*See Armour*, Doc. 1, ¶¶ 9-10). The filing of this amended complaint not only complied with the conditions of the Final Judgment—which specifically allowed additional plaintiffs to be identified within thirty days—but also complied with Federal Rule of Civil Procedure 21. Rule 21 states: "On motion or on its own, the court may at any time, on just terms, add or drop a party."

Furthermore, an examination of the other facts surrounding the final judgment reveals that good conscience and equity do not preclude its enforcement. The *Armour* Complaint does not claim that the Plaintiffs were added to the *Tolbert* lawsuit without their consent. It references "the lawyers" who were present at the joint mediation and who originally filed the claims on behalf of Anniston residents; presumably these lawyers were acting on behalf of the Plaintiffs and with their express permission.[4] No evidence exists that any of the listed *Tolbert* Plaintiffs have filed any type of malpractice action or other complaint against their attorneys for misrepresenting them or agreeing to the settlement without their consent. If the Plaintiffs' duly appointed attorneys entered into a valid settlement agreement, then no basis exists for them to

---

[4]In fact, one of the *Armour* Plaintiffs' briefs opposing the motion for an injunction in *Tolbert* implicitly acknowledges that the attorneys who placed the *Armour* Plaintiffs' names on the appendices to the Consolidated, Amended, and Restated Complaint were *their* lawyers. The brief states: "Nothing but their names were listed by *their* lawyers." (*Tolbert*, Doc. 941, at 2) (emphasis added).

12

challenge it now.

The *Armour* Plaintiffs also argue that the court did not know the exact number of plaintiffs when it approved the Settlement Agreement, so it could not have known whether the Settlement Agreement was fair. The flip side of that argument, however, is that the *Armour* Plaintiffs *did* know the exact size of the settlement when *they* signed up. They did not protest at the time and have presumably accepted benefits under the settlement over the course of the past ten years.

Finally, the timing consideration leads the court to the conclusion that equity and good conscience require that the judgment be enforced. Even though Rule 60(d) allows an action to be brought outside of the one-year limitation imposed on portions of Rule 60(b), the timing of the action must still be *reasonable*. No new facts or circumstances have recently arisen in this case that make the *Armour* Plaintiffs' challenge particularly appropriate now; this claim could have and should have been brought ten years ago if the *Armour* Plaintiffs believed they were improperly included in the Final Judgment and Order or that the settlement was not fair.

The second element—"a good defense to the alleged cause of action on which the judgment is founded"—goes to the merits of the underlying case. The court looks to see whether the party bringing the independent action, in this case the Plaintiffs, could actually prevail on the merits of their claim if the previous judgment were relitigated. The court assumes that if Plaintiffs were allowed to relitigate their claims arising from the release of PCBs in Anniston, Alabama, they would at least successfully negotiate a settlement, as occurred in *Tolbert* and the other related cases. Plaintiffs, therefore, satisfy the second element of the test.

The third element looks for the presence of "fraud, accident, or mistake which prevented

13

the defendant in the judgment from obtaining the benefit of his defense." As applied to these circumstances, the court looks to see whether fraud, accident, or mistake prevented the Plaintiffs from voicing their objections to the judgment at the time it was entered. As already discussed, no such objections were raised at the time, nor in the decade that followed the entry of the *Tolbert* Final Judgment. Plaintiffs do not contend that their counsel at the time misrepresented to the court their desire to be a part of the Final Judgment either by fraud or mistake. Furthermore, they do not allege that any error occurred at any stage of the process—either by illicit or honest motives—that prevented them from obtaining the benefit of full representation in decisions surrounding the *Tolbert* Final Judgment.

The court is unable to discern whether the fourth element—"the absence of fault or negligence on the part of the defendant"—refers to the absence of fault on the merits of the original case or the absence of fault in the rendering of an inequitable judgment. If it refers to absence of fault on the merits, then the analysis as to the current Plaintiffs is the same as for the second element; the underlying claim for injury from the Anniston PCBs is likely meritorious. If this element refers to the absence of fault in the rendering of the allegedly inequitable judgment, however, the Plaintiffs cannot satisfy this element. Plaintiffs were negligent in not raising any objections they had to the Final Judgment at the time they were brought in to the *Tolbert* case, or at least within a reasonable time thereafter. Plaintiffs were also negligent in joining the case at all if they did not view the settlement as fair.

The fifth element of an independent action is the absence of any adequate remedy at law. This element is a reminder that these five essential elements were originally developed long before the Federal Rules of Civil Procedure were written, at a time when the independent action

was an equitable remedy rather than a remedy under Rule 60.  *See National Sur. Co. v. State Bank*, 120 F. 593, 599 (8th Cir. 1903). Although technically this element no longer applies, the court finds that the heart of the inquiry is whether the party filing the action has exhausted other methods challenging the judgment. As the Eleventh Circuit has more recently stated, an independent action is meant to be an "extraordinary remedy" reserved only for "exceptional circumstances." *Solomon,* 154 F. App'x at 93. Here, as already noted, Plaintiffs could have refused to join the settlement in the first place or protested the addition of their names at the time they were added. Furthermore, Plaintiffs could have challenged the judgment through a Rule 60(b) action in the *Tolbert* case itself, or even through a Rule 60(d) independent action that was filed within a reasonable time after the entry of the *Tolbert* Final Judgement.

As a whole, the court finds that the Plaintiffs fail to meet even a majority of the five essential elements, and certainly do not meet them all. Although the court realizes that it has broadly construed the test to apply it to the circumstances of this case, it has ultimately done so to lend structure to its analysis of the "grave miscarriage of justice" standard set out by the Supreme Court. *See Beggerly*, 524 U.S. at 47.

Regardless of the application of the five essential elements of an independent action, the court finds, for the reasons previously discussed, that the Plaintiffs have failed to show the grave miscarriage of justice that is necessary to maintain a Ruly 60(d) independent action.  Plaintiffs are attempting to do just what the Eleventh Circuit warned against in *Solomon*: employ "a means for litigants to obtain the district court's reconsideration of the claims and defenses its judgment adjudicated." 154 F. App'x at 93. As such, the court finds that Defendants' motion to dismiss is due to be GRANTED and Plaintiffs' Rule 60(d) independent action must be DISMISSED.

**C.     Whether Plaintiffs Have Stated A Plausible Claim that the *Tolbert* Judgment is Void**

The court will briefly address some of Defendants' other arguments as alternative avenues of dismissing Plaintiffs' claims. Defendants assert that Plaintiffs have failed to state a plausible claim that the *Tolbert* Final Judgment is void. The basis of Plaintiffs' argument that the *Tolbert* Final Judgment is void rests on the assumption that a court does not have jurisdiction over a plaintiff who is added to the action after a final judgment is rendered. As the court has already noted, Rule 21 of the Federal Rules of Civil Procedure explicitly allows the court to add or drop a party "at any time."

Defendants cite various cases for the proposition that federal courts may add parties even after the entry of final judgment in a case. The court acknowledges that none of the cited cases are factually similar to this one, but still accepts them as examples of the application of Rule 21 to post-judgment scenarios. *See Mullaney v. Anderson*, 342 U.S. 415, 416-17 (1952) (allowing the addition of plaintiffs under the authority of Rule 21 after the judgment of the district court and the appeal of the case to the circuit court, while the case was pending before the Supreme Court); *Perry v. Blum*, 629 F.3d 1, 16 (1st Cir. 2010) (ruling that the district court acted within its discretion in joining defendant co-owner of apartment complex in mortgage dispute after trial); *Fromson v. Citiplate, Inc.*, 886 F.2d 1300, 1303-04 (Fed. Cir. 1989) (affirming district court's decision to allow plaintiff's post-trial amendment adding defendants to relate back to the original pleading); *Du Shane v. Conlisk*, 583 F.2d 965, 967 (7th Cir. 1978) (ruling that an additional, necessary defendant could be brought in after judgment for remedial purposes); *In re Neurontin Marketing & Sales Practices Litig.*, 810 F. Supp. 2d 366, 370-74 (D. Mass. 2011) (holding that

16

subsidiaries of a healthcare provider suing for unfair business practices could be added post-trial as plaintiffs).

Plaintiffs cite *Zenith Radio Corp. v. Hazeltine* for the proposition that parties *cannot* be added after a final judgment is entered. 395 U.S. 100, 110 (1969). In addition to being contrary to the plain language of Rule 21, this proposition is not supported by the case. In *Zenith*, the party being added as a counter-claim defendant *opposed* being brought in *at the time* of the addition, not ten years later. *Id*. Furthermore, the Supreme Court's "elementary" rule was that "a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the *defendant*." *Id*. (emphasis added). This rule has no application to a voluntarily added plaintiff.

### D.     Principles of Estoppel

Defendants also argue that principles of estoppel bar Plaintiffs' claims. The court agrees. The Eleventh Circuit has established that "[w]here one in whose favor a judgment is rendered accepts the benefits, he is estopped from questioning the validity, [sic] of the judgment in any subsequent litigation." *Zaklama v. Mount Sinai Medical Center*, 906 F.2d 645, 650 (11th Cir. 1990) (quoting *Livesay Indus., Inc. v. Livesay Window Co.*, 202 F.2d 378, 382 (5th Cir. 1953)).

Plaintiffs do not deny that they accepted benefits from the *Tolbert* Settlement; instead, they assert that "[t]he acceptance of $5,000.00 is not a 'benefit' if it is obtained in exchange for full payment of your new 2014 Mercedes." (*Armour*, Doc. 30, at 13). One of several problems with this analogy is that it assumes a certain value for the Plaintiffs' claims that has not been proven. Furthermore, the very purpose of a settlement is for both parties to make concessions in order to avoid further litigation costs and the uncertainty of recovery. The *Armour* Plaintiffs even had an advantage over the other *Tolbert* Plaintiffs in that they *knew* the value of the settlement

17

they would receive before they even chose to become a part of the suit. Whatever the potential value of their claims—which cannot be known at this point—they chose to settle and have taken advantage of that settlement. They are thus precluded from coming back for another bite of the apple a decade later.

### E.    Requirements of Rule 23

The court need not address Defendants' Rule 23 argument as it has already firmly established that this suit is due to be dismissed, and the Rule 23 analysis is far afield from the discussion of the validity of the Rule 60 independent action and the *Tolbert* Final Judgment.

## V.    CONCLUSION

For these reasons, the court finds that Defendants' motion to dismiss is due to be GRANTED and Plaintiffs' complaint is due to be DISMISSED WITH PREJUDICE. The court will enter a separate Order to that effect.

DONE and ORDERED this 3rd day of February, 2014.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE